## THE RICHMOND *v.* CAKE.

LANDLORD AND TENANT ACT ; LANDLORD'S LIEN ; EXEMPTIONS ;
ATTACHMENT ; AFFIDAVITS ; 73D RULE.

1. Sec. 808, R. S. D. C., providing that the proceeding to enforce any lien shall be by bill or petition in equity, does not apply to the lien for rent given a landlord by the Landlord and Tenant Act, upon the chattels of his tenant upon the leased premises, as the act provides adequate methods at law to enforce the landlord's lien.

2. The tacit lien for rent given a landlord by that act, extends only to rent due, and rent which has actually commenced to accrue but which is not yet payable. Therefore, where monthly, quarterly or annual periods of payment of rent are provided in a lease, the lien does not extend to rent to accrue for any such period, unless the period has actually commenced to run and the landlord's right to that installment of rent has become fixed and absolute.

3. The exemption from the lien of the landlord, given by that act, of such of the tenant's chattels as are not subject to execution for debt, refers only to such statutory exemptions as are allowed to householders, mechanics and others by Sec. 797, R. S. D. C., and other similar exemptions. Such exemption does not extend to chattels upon which there is an existing lien by deed of trust, mortgage, or otherwise.

4. An attachment will lie against chattels which are subject to a deed of trust, especially where the deed of trust is in favor of the plaintiff in the suit in which the attachment is issued.

5. It is not necessary to show affirmatively, in an affidavit to support an attachment issued to enforce a landlord's lien against his tenant's chattels, that the chattels are not exempt from seizure. It is sufficient if the affidavit states that the chattels are subject to the lien.

6. Under the 73d common law rule of the Supreme Court of the District of Columbia, two affidavits only can be filed, one for the plaintiff to support his declaration, and one for the defendant to verify his plea. The rule does not allow or contemplate rebutting affidavits by the plaintiff.

7. Eviction of a tenant by his landlord from the leased premises during the term of the tenancy, is a good defense to an action by the landlord for rent due or payable for any part of the term which the tenant has thereby been prevented from enjoying.

8. And in such an action, an affidavit of defense under the 73d rule, which alleges the "eviction" of the tenant by his landlord, presents a sufficient defense. Eviction is not merely a conclusion of law, but the term is used to express the act of dispossession, as well as the result of the act, and in such an affidavit is to be taken in the sense in which it would be effectual rather than in the sense in which it would be meaningless and unavailing.

9. The affidavit of defense in such a case is sufficient where it states that the defendant is "informed and believes" that he was evicted by persons acting under the instructions of the plaintiff, and expects so to prove at the trial.

No. 129. Submitted October 20, 1893.—Decided November 8, 1893.

HEARING on appeals and cross-appeals from several orders and judgments of the Supreme Court of the District of Columbia, holding a law term, in two actions for rent, wherein attachments were issued to enforce the lien of a landlord. *Reversed.*

THE COURT in its opinion stated the case as follows:

These are two suits between landlord and tenant to enforce the payment of rent by attachment. The plaintiff, The Richmond, which is a corporation under the laws of the State of New York, and the owner of the premises known as "The Richmond Flats," at the northeast corner of Seventeenth and H streets, in the city of Washington, leased those premises to the defendant, Horace M. Cake, by lease in writing, for the term of five years, from the first day of November, 1886, at the yearly rent of $7,000, payable in equal monthly installments in advance on the first day of each and every month. The premises were to be used as a hotel. To secure the payment of the rent, it was stipulated in the lease that the lessee should execute and deliver to the lessor a deed of trust, whereby he should convey to a trustee, for the benefit of the lessor, certain furniture, to be placed on the premises by the lessee, to the value of not less than $3,000. It was also stipulated in the lease, that the lessee should place upon the premises certain other furniture, to be purchased by him, to the value of $10,000, upon which, after the payment thereon of $2,500, he should execute a second deed of trust to secure the lessor, the first lien being intended to be held by the vendor of the goods. At the end of the term of five years, the lessee was to have the option of renewing the lease for one year thereafter at a rental of $8,000, and for a second year at a rental of $8,500, and for a third year at a rental of $9,000, upon the same terms and conditions as in the original lease.

Adjoining "The Richmond Flats" was another piece of property known as the Chew property, owned by the same plaintiff, and leased to the defendant by separate provisions

contained in the same lease, for the same term of years
and upon the same conditions as in the case of "The
Richmond Flats," except as to the amount of the rent, which
was to be $900 a year, payable monthly in advance. This
rent was to cease temporarily in the event of a contemplated
improvement, and thereafter it was to be at the rate of 10 per
centum of the cost of the land and the improvement. The
lease of one, however, was not to be renewed without the
renewal of the other. The deed of trust conveying the fur-
niture appears to have been duly executed, and it would
seem also, from the amount of rent claimed in these suits to
be due, that the contemplated improvement was made of the
Chew property.

The lease by its terms expired on the first day of No-
vember, 1891; but we may presume that the option of re-
newal for one year thereafter reserved to the lessee was exer-
cised by him. These suits are for rent charged to have ac-
crued during the renewed term, and in which the lessee
seems to have been in arrears.

The first suit, instituted on June 2, 1892, was to recover
payment of the sum of $2,375 for the rent of the premises
mentioned for the two months of May and June, 1892, pay-
able in advance on the first day of each month, at the rate
of $1,187.50 a month, which was claimed to be due and un-
paid. With the declaration an affidavit[1] of Anthony Pollok,

---

[1] The affidavit referred to reads as follows : "I, Anthony Pollok, do
swear that I am the agent and attorney of 'The Richmond,' the plaintiff
in this action, and have personal knowledge of the facts in the premises ;
that said defendant, Horace M. Cake, is tenant of said premises, known
as 'The Richmond Flats,' under lease from the plaintiff, expiring
October 31, 1892, at the monthly rent of $1,187.50, payable on the first
day of each month; that the rent, due May 1, 1892, and June 1, 1892, is
due and unpaid, and that the plaintiff has a just right to recover from the
defendant said sum of $2,375, with interest as claimed in the declaration,
exclusive of all set-offs and just grounds of defense."

"And, further, that said defendant had furnished 'said house as an
apartment house with a large quantity of furniture suitable thereto, which
said personal chattels of said defendant were on said premises, and on
which the plaintiff has, under the law, a tacit lien for rent ; that said
defendant is now engaged in moving all of said chattels from said de-
mised premises."

the plaintiff's agent, was filed, which was to the effect that the rent was due and payable, as claimed; and that the defendant had furnished the premises with a large quantity of furniture, which was then on the premises and on which, under the law, the plaintiff had a tacit lien for the rent; and that the defendant was then engaged in removing all of said chattels from the demised premises. The purpose of this affidavit was twofold: 1st. To procure a summary judgment, without trial by jury, under the 73d of the General Rules of the Supreme Court of the District of Columbia, which authorized such a judgment, unless the defendant filed a proper and sufficient affidavit of defense; and, 2d. As the preliminary for the issue of a writ of attachment under the Landlord and Tenant Act in force in the District of Columbia.

Thereupon, on the same day, June 2, 1892, a writ of attachment was issued, and levied on the same or the next day by the marshal, on some of the chattels of the defendant on the premises.

On the next day, June 3, 1892, a second writ of attachment was issued in the same suit for $4,750, "being the four ensuing months to accrue due" thereafter; and this writ was levied by the marshal on the same day on other furniture on the premises.

At first, one return was made of both writs; but this the marshal, on his own motion, was afterwards allowed by the court to amend by making separate returns.

The plaintiff then brought a second suit to recover rent for the months of July and August, 1892. The declaration in this suit was also supported by affidavit[1] to the effect that

---

[1] The affidavit referred to reads as follows : " I, William F. Mattingly, upon oath, state as follows : I am the attorney and agent of the plaintiff in this action, 'The Richmond'; that the plaintiff let to the defendant said premises mentioned in the foregoing declaration, 'The Richmond Flats,' for one year, ending with October 31, 1892, at the monthly rental of $1,187.50, payable on the first day of each and every month during said term, in advance, and that the said defendant has not paid the two months' rent for said premises, due July 1, 1892, and August 1, 1892, and that the amount claimed in said declaration for two months' rent, $2,375, is justly payable by said defendant, Horace M. Cake, to the plaintiff, with interest as claimed, exclusive of all set-offs and just grounds of defense."

the rent was due and unpaid. But no writ of attachment was issued in this cause.

The defendant filed the same pleas, four in number, to each suit. The first and second pleas were the general issue; the third, that the only contract in the premises between the parties was a contract under seal; and the fourth, that on June 2, 1892, the plaintiff had evicted the defendant from the demised premises, and had since that time itself continued in the exclusive possession and control of the premises. The third and fourth pleas were supported by the affidavit[1] of the defendant, to the effect substantially that, on the day specified, the marshal and his deputies took complete possession and control of The Richmond Flats, and evicted the defendant therefrom; and that he is informed and believes, and expects to prove, that this was done under the authority of the plaintiff; and that the agent of the plaintiff has since the 5th day of June been in full possession and control of the premises; and that by such eviction the defendant was relieved from liability for the rent claimed by the plaintiff.

The defendant also filed another somewhat similar affida-

---

[1] The affidavit referred to reads as follows : "I, Horace M. Cake, on oath, say that the only contract which I ever entered into with the corporation called The Richmond in regard to the occupation by me of the premises at the northeast corner of 17th and H streets, northwest, in the City of Washington, District of Columbia, was the formal lease in writing dated the      day of           , 188 , which lease was signed and sealed by me, a copy of which is on file in the case of Horace M. Cake against The Richmond, No.     in equity, in this court, and is made a part hereof. I exercised the right of renewal given by said lease by renewing the lease for one year from the expiration of the term created thereby, and this renewal was not under seal. When the marshal of this District and his deputies on June 2, 1892, and immediately afterwards, undertook the execution of the writs of attachment issued in this case, they took complete possession and control of The Richmond Flats and evicted and ousted me from the same, and I am informed and believe, and expect to prove at the trial of this cause, that this was done under the direction and authority of the plaintiff, and that Anthony Pollok, the agent and attorney of the plaintiff, as such agent and attorney, on or about the 5th day of June, resumed full possession and control of the whole of said premises, and that the plaintiff has remained in such possession and control ever since. And for the reasons stated, I deny the plaintiff's right to recover anything in this action, and I especially deny its right to receive any part of the rent claimed to be due for the month of June, 1892,"

452 · 1 Court of Appeals Dist. of Col.

vit in the first cause, ancillary to a motion to dissolve the writs of attachment. In this, besides the allegation of eviction by the plaintiff through the agency of the marshal, the defendant averred that he had not moved any of the furniture from the premises, and that the only removal had been by guests of furniture belonging to them.

A motion was filed by the defendant to quash the two writs of attachment. The plaintiff filed an answer thereto, supported by the oaths of the deputy-marshal and the two bailiffs who had served the writs, to the effect that neither the marshal nor his deputies had evicted the defendant from the premises, or had in any manner disturbed his possession; and if they had done so that they had no authority from the plaintiff for so doing. The plaintiff also filed a motion for judgment under the 73d Rule, which has been mentioned, and a motion for condemnation of the attached property.

These motions seem to have all come on for hearing together. The court, on October 17, 1892, after having given the marshal leave to amend his return, as already stated, sustained the first writ of attachment (that of June 2), quashed the second writ (that of June 3), and gave judgment for the plaintiff in the first suit for the sum of $2,375, the amount claimed under the 73d Rule; and also gave judgment in the second suit under the same rule for a similar amount. On the next day (Oct. 18, 1892), it entered judgment of condemnation against the property attached on the 2d day of June, 1892.

The plaintiff and defendant both appealed; and their several appeals are now before us for determination.

*Mr. Wm. F. Mattingly* for the plaintiff:

1. The judgment for the plaintiff under the 73d Rule in the suit to recover $2,375 for the two months rent, due May 1st and June 1st, 1892, was proper. The defendant's affidavit does not deny that the rent was due and unpaid, but alleges that he was evicted from the leased premises. Eviction is a conclusion of law, and no facts sufficient to amount

to an eviction are alleged in the affidavit. Perjury could not be assigned upon the statements in the affidavit.

2. The motion to quash the first attachment, of June 2, 1893, was properly denied by the court below. The two months' rent due May 1st and June 1st, respectively, were concededly overdue and unpaid. This entitled the plaintiff to attach for the amount due. The affidavit filed with the declaration states that the defendant had furnished the house as an apartment house with a large quantity of furniture, which said personal chattels of the defendant are on said premises, " and on which the plaintiff has, under the law, a tacit lien for rent." In 13 Wall., 14, *Webb v. Sharp*, the court decided that the words of the statute " as are subject to execution for debt," meant to exclude goods which came within the provisions of the exemption law, for the use of the family or practice of a trade. The marshal's return in this case shows that the exempted property was left to the defendant. The defendant assigned two reasons why his motion should be granted: 1st. Because the marshal evicted him; 2d. Because the marshal having made but one levy and the second attachment being void as alleged, the entire proceeding was void. It is unnecessary to consider this last reason assigned as the marshal was permitted to and did amend his return. So the sole remaining reason assigned for quashing this attachment is that the marshal evicted the defendant. It is submitted that the rent being due and unpaid the attachment was properly levied and that a subsequent eviction by the landlord would not be good cause for quashing the attachment. And it is further submitted that the defendant's affidavit in support of his motion sets forth no facts to show an eviction, but simply states conclusions of law. And further that the plaintiff's answer to this motion and the affidavits in support of the same conclusively show that there was no eviction, but that there was a strong desire on the part of the defendant to be evicted.

3. The court below erred in quashing on defendant's motion, the second attachment for rent to accrue due. The fol-

lowing decisions of the Supreme Court of the District of Columbia, in General Term, bear upon the construction in this respect of the Landlord and Tenant act: *Joyce* v. *Wilkenning*, 1 McA., 567 ; *Gibson* v. *Gautier*, 1 Mackey, 35 ; *Fox* v. *Davidson*, 1 Mackey, 102 ; *Wallach* v. *Chesley*, 2 Mackey, 209 ; *Harris* v. *Dammon*, 3 Mackey, 90 ; *Gross* v. *Goldsmith*, 4 Mackey, 126.

The effect of these decisions seems to be to so construe the statute that the remedy by attachment cannot be availed of when the rent is not due except for such instalment of rent as has commenced to accrue while the tenant has occupied the premises. If the rent is payable monthly and the tenant is removing his goods, then the landlord can only attach for one month's rent not due, provided the occupancy of the tenant has continued into that month. Is this the legal construction of the Statute? The act gives the landlord a lien upon the tenant's chattels on the premises commencing with the tenancy and continuing for three months after the rent is due. So effective is this lien that if the tenant at any time during the term mortgage the property when he is not in arrears, the landlord's lien for rent subsequently becoming in arrear is entitled to priority over the mortgage. *Webb* v. *Sharp*, 13 Wall., 14.

The act also gives the remedy by attachment when the rent is not due if the tenant is about to remove or sell all or any of his said chattels. It is silent as to the amount not due or for what period of time not due. It certainly does not say for the first accruing instalment not due, provided the tenant has remained in possession during a portion of that time. Is the hardship upon the tenant alone to be considered as a reason for placing a forced construction upon the law?

Suppose the rent is payable weekly as is frequently the case with large hotels and theaters, is it not a gross hardship upon the landlord to say that he can only attach for one week's rent? Take the case at bar. The tenancy by its terms is made to end at a time when presumably the prop-

erty could be re-rented. At the beginning of the dull sea-
son the tenant stops paying rent and in the early summer
undertakes to remove his furniture and avoid paying six
months' rent. Is it a case of hardship upon him to say that
he shall not abide by his contract? If it is competent for the
court to say an attachment will lie for one month not due, it
would be equally competent for it to say that it would lie for
two or three months; in fact, as three months seems to have
been a favorite period with the law-maker as expressed in
the statute, would it not have been more logical to have
adopted that as the proper time?

*Mr. W. L. Cole* and *Mr. W. W. Flemming* for the de-
fendant (*Mr. Wm. C. Prentiss* was with them on the brief):

1. The court below erred in overruling the defendant's
motion and refusing to quash the writ of attachment. The
remedy by attachment is created by the Landlord and Ten-
ant act above referred to and the creation of a remedy gives
a right to its use; and when such aid is sought must comply
strictly with the requisites of the statute. The second sec-
tion of the act declares that the landlord *has a lien on the
personal chattels of the tenant, on the premises, subject to
execution.* To create these liens three things are requisite:
First. Personal chattels of the tenant; Second. They must
be on the premises; Third. They must be subject to execu-
tion. If these be requisite to create a lien, they must each
and all exist in fact, and should affirmatively appear, either
by the pleadings, or by the affidavits of the plaintiff, before
the court should issue an attachment; if the facts do not war-
rant the writ, or the requisites do not all exist and affirma-
tively appear, upon motion the attachment should be
quashed. In a legal or equitable action a party must allege
all the grounds upon which he expects a judgment. *Star* v.
*Star,* 94 U. S., 477-85. When a fact is necessary to be
proved on the trial in order to sustain the plaintiff's right of
recovery, the declaration must contain an averment substan-
tially of such fact, in order to let in the proof. *Bank of the*

*United States* v. *Smith*, 11 Wheaton, 171 (174). The office of the declaration is to set forth in legal and technical form the cause of action. If deficient in form it is subject to demurrer. If sufficient in these respects, the defendant must set up his defense by a plea. 1st Chitty's Pleadings, 213; Stephen's Pleadings, 224. Nowhere does it appear in the declaration or affidavit of the plaintiff in this cause, that at the time of the taking out of the attachment, the tenant had *personal chattels, on the premises, subject to execution.*

2. The court below erred in granting in each of the cases the motion of the plaintiff for judgment notwithstanding defendant's affidavits. The defendant pleads that he never was indebted as alleged, the only contract ever entered into between the plaintiff and the defendant, in reference to the occupation by the defendant of the said "Richmond Flats," being a contract signed and sealed by the defendant, and that on the 2d day of June, 1892, the plaintiff evicted the defendant; and in defendant's affidavit, defendant says that plaintiff, by its agent and attorney, Anthony Pollok, assumed control of said premises. These facts are nowhere denied except by the affidavits under leave to amend the marshal's return. How then could a court of law in a pending cause, without the aid of a jury, decide the question of fact and render judgment? This alone, we submit, without other grounds, would grant to the defendant a new trial or a trial, none having yet been had.

It is error to decide a cause against a defendant if the plea is not denied by a replication. *Gettney* v. *Bank*, 9 Cranch, 372; *United States* v. *Buford*, 3 Pet., 12. An evasion or insufficient plea is not helped by the omission of complainant to file the general replication. *Pierce* v. *Brown*, 7 Wall, 205. If the defendant below had omitted all the allegations in the declarations and the claims set up in the affidavit, and had only pleaded as a defense his fourth plea, supported, as it is by his affidavit, plaintiff could not have been entitled to a judgment in excess of eleven hundred and eighty-seven dollars and fifty cents ($1,187.50) until after a trial by a jury

upon the issue submitted by said plea. Such a plea is a defense to an action for rent, and in bar of such action, and has been both prior to and since the time of that great expounder of the common law, Lord Coke. " If by the wrongful act of the landlord the tenant is deprived of the possession of the premises or any part of them it excuses non-payment of rent during the period of interruption." Coke Litt., 148 *b.*; *Leishan* v. *White*, 1st Allen, 485 (Mass.) ; *McClung* v. *Price*, 59 Pa. St., 420 ; *Insurance Company* v. *Sherman*, 46 N. Y., 370.

3. The exception to the judgment of condemnation merits a notice. The plaintiff does not pretend that the property was subject to execution. It does not appear to the court that such was the fact by any pleading, and it certainly should appear. Defendant submits that it does not appear that all the property of defendant upon the premises was, by the terms of a lease, conveyed to trustee, that no legal title was vested in the defendant, and an execution for debt could not have been levied upon said personal chattels. That by bringing a suit upon the contract of lease plaintiff acknowledged the lease and the compliance of the terms thereof, and the non-denial of the plea and the affidavit which set it up was affirmative admission of its terms having been complied with. The lien attached on the 15th day of July, more than three months prior to the commencement of the term of the lease, and therefore prior to the statutory lien which could only take effect from the commencement of the term. *Webb* v. *Sharp*, 13 Wallace, 14 ; *Fowler* v. *Rapley*, 15 Wallace, 328; *Bell* v. *White*, 94 U. S., 382. A motion to quash is in the nature of a demurrer, and when it appears that there are other grounds for demurrer the court will hear them. Upon a general demurrer the court is not confined to the points noted in the margin. If it finds the pleadings bad upon other grounds the demurrer will be sustained. *Hines* v. *The District*, MacA. & Mack., 144.

Mr. Justice MORRIS delivered the opinion of the Court :

We will first consider the question of the validity of the writ of attachment issued on June 3, 1892, and the plaintiff's appeal from the order quashing the same. For we will not stop to consider the right of the marshal under the authority of the court to amend his return; this is not seriously controverted.

The act of Congress of February 22, 1867, entitled "An act to amend the laws of the District of Columbia in relation to judicial proceedings therein" (14 Stat., 403), contains, among other radical and important changes in the then existing law, a provision, designated as Section 12 of the act, and which was subsequently incorporated into the Revised Statutes of the United States for the District of Columbia, as Sections 677 to 679, both inclusive, of that revision, whereby the power of distraint exercised by landlords at common law to seize the goods of their tenants for rent in arrear was abolished, and in place of it, it was enacted that—

"The landlord shall have a tacit lien upon such of the tenant's personal chattels, on the premises, as are subject to execution for debt, to commence with the tenancy and continue for three months after the rent is due, and until the termination of any action for such rent brought within the said three months." And this lien may be enforced:

" 1st. By attachment, to be issued upon affidavit that the rent is due and unpaid; or, if not due, that the defendant is about to remove or sell all or some part of said chattels; or,

" 2d. By judgment against the tenant and execution to be levied on said chattels or any of them, in whosesoever hands they may be found; or,

" 3d. By action against any purchaser of any of said chattels, with notice of the lien, in which action the plaintiff may have judgment for the value of the chattels purchased by the defendant, but not exceeding the rent, arrear, and damages."

Another section of the same act (Sect. 10), which became Section 808 of the revision, provides that the proceeding to enforce any lien shall be by bill or petition in equity. And it may also be noted here that an act of Congress of the pre-

vious year (act of June 1, 1866, 14 Stat., 54) remodeled the law of attachments in the District of Columbia, and provided that they might issue upon affidavits showing either non-residence of the defendant, or evasion by him of ordinary process, or removal or contemplated removal by him of some of his property from the District so as to defeat just demands against him (Rev. Stat. U. S. for Dist. of Col., Sec. 782).

The second and third process provided for the enforcement of the landlord's tacit lien, have no part in the discussion of the present case further than as they may help to throw light upon the first. It is quite evident at all events from the consideration of all this legislation, that, while the general purpose of the legislature is quite clear, it has not expressed its intention with all the precision that could be desired. In the case where the landlord's rent is due and payable to him, and it remains unpaid, the provision of the statute is probably clear enough. And yet we are not to suppose that even in that case is Section 10 of the act applicable which provides that every lien shall be enforced by suit in equity. For the remedy here is plain, adequate and complete by the ordinary common law processes of the courts; and the generality of Section 10 is to be restricted in its application to such cases as those of which the common law cannot take cognizance. It is also quite clear that, notwithstanding the comprehensive scope of the language used in the statute, it was not the intention of the law-making power to subject goods and chattels used in the course of trade and as the ordinary objects of purchase and sale to the effect of this tacit lien to the same extent at least as other goods and chattels. It is not to be supposed for a moment that a purchaser, who goes into a store to buy an article in the ordinary course of business, cannot purchase that article except in subordination to the landlord's lien, even when he knows that the storekeeper is a tenant merely, and even though he should be aware that he was in default for the payment of his rent. No more can we suppose that the leg-

islature intended to authorize the enforcement of a possible liability that might never become an actual one.   In the case of long leases there are various contingencies that might militate against the continued enjoyment of the premises by the tenant and the continued right to the rent by the landlord. And in such leases it is the general, we may say the almost universal, custom of the parties to provide in fact for shorter subordinate terms, especially for the regulation of the matter of the payment of rent, and we must understand that the act of Congress is to be read with reference to such subordinate terms.   The legislature could scarcely have intended to provide for the enforcement of a liability, which is neither due nor has commenced at all to accrue.   On the other hand, it may well be assumed that Congress intended to protect the landlord in the enforcement of his security for rent which had commenced to accrue, but which had not become payable.   Where, therefore, periods of payment have been provided in a lease, either monthly, quarterly, or annually, as is usual, and one of these periods has commenced to run, and the right of the landlord to his rent for that period, or to some proportional part of it, in any case in which apportionment would be proper, has become fixed and absolute, the legislature might well extend the provisions of this statute to the protection of that right.   If this were not the intention of Congress it would follow that, in the case of any lease, no matter how long its term was to extend, the landlord might on the very second day of the term, after the tenant has entered into possession, institute proceedings to sequestrate enough of the property of the tenant on the premises to pay the rent for five, ten, twenty, or nine-nine years, whatever might be the duration of the term.   Of course, we cannot admit for a moment that this was the intention of the law.   And if this could not be done, neither can a suit be maintained for a period of time for which, under the express agreement of the parties, the rent has not commenced to accrue.   We read the statute to mean cases in which the rent has actually commenced to accrue, but is not

yet payable, and we think the decision of the Supreme Court of the District of Columbia, in the case of *Joyce* v. *Wilkenning*, 1 MacA., 573, is founded upon reason and justice, and rightly disposed of this question.

We are of opinion, therefore, that the order of the court in special term in quashing the attachment issued on June 3, 1892, was right, and should be affirmed.

We next proceed to consider whether the attachment issued on June 2, 1892, for the two months' rent then due and payable, was valid. The defendant's claim in opposition to the writ is that the tacit lien given by the statute only attaches to the goods and chattels of the defendant on the premises subject to execution; that the plaintiff nowhere makes it appear affirmatively, as he should do, that the goods attached were subject to execution; and that, on the contrary, the lease between the parties shows that they were not subject to execution, inasmuch as they were actually covered by a deed of trust in favor of the complainant. We do not regard these propositions as well founded.

The exemption from the lien of chattels not subject to execution for debt refers only to such statutory exemptions as are allowed to householders, mechanics and others by the act of Congress of Feb. 5, 1867 (14 Stat., 389), enacted a few days before the act which we are now considering, and which appears as Section 797 of the Revised Statutes for the District of Columbia, and any other similar exemptions that there may be in existence. It cannot in reason be construed to extend to property upon which there is an existing lien by way of mortgage, deed of trust, or otherwise. If it were so construed, the landlord's remedy would in most cases be lost; and yet the tenant might have ample property beyond the reach of the landlord. There is no reason why the statutory lien might not attach even if there was a prior existing lien; it would, of course, attach subject to the existing lien, and the remedy for its enforcement might be in equity, under Section 808 of the Revision, to which we have heretofore referred. The letter of the statute is " chattels not subject to

execution for debt." It does not say " chattels not subject to execution at common law," but chattels not subject to execution under any circumstances. The letter and the spirit are here in accord. *Webb* v. *Sharp,* 13 Wall., 14.

It is argued, however, that the chattels in this case cannot be taken in execution at all by way of attachment, for the reason that they are subject to a deed of trust in favor of the plaintiff. This argument might have force in the case of real estate, where the title must be passed by deed; but a lien upon chattels may be waived by the holder of it by an act *in pais.* Especially may it be waived by the plaintiff in this case, inasmuch as he is the only party that might be aggrieved. If he chooses to enforce his statutory and not his conventional remedy, no other person, and least of all the defendant, has any right to complain.

Moreover, there is nothing at all to show with certainty in the present case that the chattels attached were actually covered by the deed of trust which was stipulated to be executed by the defendant. The plaintiff swears that the chattels sought to be attached were the defendant's personal chattels on the premises on which the plaintiff under the law has a tacit lien. This the defendant nowhere controverts, and the fact that a deed of trust was to be executed, or was in fact executed, years before, upon certain chattels then in the building, or soon thereafter to be placed in the building, does not at all imply that all chattels that might thereafter be found in the building and belonging to the defendant were covered by such deed of trust.

The contention of the defendant that the plaintiff ought to have made it appear affirmatively that the chattels sought to be attached were not subject to exemption, we regard as wholly untenable. The plaintiff swore that they were subject to the lien, and only chattels not exempt from execution could be subject to the lien. The exemption, in any event, is rather a guide to the marshal in making his levy, than a requirement to govern the plaintiff in shaping his pleadings. We have just held that the exemption intended

by the statute is the exemption of amount, rather than of specific articles, and the exemption cannot well be determined until the marshal proceeds to make his levy. To require the plaintiff, therefore, in advance to state that the chattels were not subject to exemption, when a certain amount might have been liable in any case to be exempted, and it was not for the plaintiff to determine the specific articles that should be exempted, would be to require an unreasonable thing.

We are of opinion that the special term of the Supreme Court of the District of Columbia was also right in refusing to quash the writ of attachment of June 2, 1892.

There remains the question of the appeal from the order of that court in directing the entry of judgment in both suits against the defendant, under what is known as the 73d of the General Rules of the Supreme Court of the District of Columbia. That rule, which is a most salutary one for the speedy administration of justice, provides as follows:

"In any action arising *ex contractu*, if the plaintiff or his agent shall have filed, at the time of bringing his action, an affidavit setting out distinctly his cause of action, and the sum he claims to be due, exclusive of all set-offs and just grounds of defense, and shall have served the defendant with copies of his declaration and of said affidavit, he shall be entitled to a judgment for the amount so claimed, with interest and costs, unless the defendant shall file, along with his plea, if in bar, an affidavit of defense denying the right of the plaintiff as to the whole or some specified part of his claim, and specifically stating also, in precise and distinct terms, the grounds of his defense, which must be such as would, if true, be sufficient to defeat the plaintiff's claim, in whole or in part."

In pursuance of this rule, the plaintiff filed an affidavit which was sufficient to authorize the entry of judgment in his favor unless the defendant interposed a sufficient counter-affidavit. The question now is the sufficiency of that counter affidavit. The plea which it supports is a plea of eviction of

the defendant from the premises by the plaintiff on the 2d day of June, 1892, and that the plaintiff has since remained in the exclusive possession and control of the premises. And the defendant's affidavit is to the effect that on the day specified, June 2, 1892, when the marshal and his deputies undertook to execute the writs of attachment that had been issued, "they took complete possession and control of The Richmond Flats, and evicted and ousted the defendant from the same," and that he (the defendant) was informed and believed, and expected to prove at the trial, that this was done under the direction and authority of the plaintiff; and that about the 5th day of June, the plaintiff, by its agent, resumed full possession of the premises, and has since remained in such possession.

Eviction of the tenant by the landlord from the premises during the term of the tenancy is undoubtedly a good and sufficient defense against a claim for rent due or payable, for any part of the term which the tenant has thereby been prevented from enjoying. And notwithstanding that in this case the rent for June, 1892, was due and payable on the first day of June, 1892, the consideration for such rent was the use and occupation of the premises by the tenant during the month of June, and if, on the 2d day of June, the tenant was evicted by the landlord, the right of the landlord thereafter to recover that rent became barred by his own action.

But eviction, it is argued, is a conclusion of law; and it is claimed that the defendant in this case should have stated, not that he had been evicted, but the facts assumed by him to have constituted an eviction. And it is argued in the same connection that the affidavits filed in the cause by the deputy-marshal and the bailiffs who served the writs of attachment, showed very plainly that the defendant had not been at all disturbed in his possession of the real estate that had been demised to him, and that he was not in any manner whatever disturbed, further than was absolutely necessary for the marshal to make his levy and schedule of the personal property attached.

But the merits of the case and the right of the plaintiff to judgment cannot be tried on these affidavits of the deputy-marshal and bailiffs. They have no place under the rule in the consideration of the motion for judgment. The rule provides only for affidavits by the plaintiff and defendant, and does not contemplate the substitution of rebutting affidavits for trial by jury. While we are justified in inferring to some extent that the marshal and his deputies did no more than they were required by their duty to do, the motion for judgment must be determined only by the sufficiency or insufficiency of the defendant's affidavit. If he has sworn falsely in it, as he must have done if the affidavits of the deputy-marshal and bailiffs are true, he has made a proper case for the criminal court; but we cannot here assume that he has done so. We must assume his statement for the present purpose to be true. And the only question is, whether, if we assume it to be true, it shows a sufficient defense. We think it does. Eviction is not merely a conclusion of law. The term is used to express the act of dispossession, as well as the result of the act; and we are to take it here in the sense in which it would be effectual, rather than in the sense in which it would be meaningless and unavailing.

Eviction by the marshal, without instructions to that effect from the plaintiff would, of course, constitute no sufficient ground of defense; and the defendant does not swear that the marshal, in the alleged eviction, acted under instructions from the plaintiff, but only that he, the defendant, was so informed and believed, and expected so to prove at the trial. It might be difficult, perhaps impossible, upon this statement to hold him for perjury; but it would seem to be the best statement that, under the circumstances, he could make. He is not supposed to have personal knowledge of the instructions given by the plaintiff to the marshal. He swears to the fact of eviction, and if he was not in fact evicted, he has committed perjury; and if he cannot be held for perjury in the other statement, it is an incident in the administration of justice for which no provision has been or perhaps can be

made. The plaintiff is not deprived of any substantial rights by being remitted to the ordinary course of justice and his trial by jury.

We think the defendant's affidavit is a sufficient affidavit of defense; and we must, therefore, *reverse the judgment of the Supreme Court of the District of Columbia, in special term, and remand the cause to that court, with instructions to vacate that judgment, and for such other proceedings in accordance with law as may be just and proper. Each party will pay his own costs on appeal.*